**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **INTEGRATED BUSINESS** | ) | |
| **TECHNOLOGIES, LLC, an Oklahoma** | ) | |
| **limited liability company,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-CV-048-TCK-PJC** |
| | ) | |
| **NETLINK SOLUTIONS, LLC, an** | ) | |
| **Oklahoma limited liability company,** | ) | |
| **BRET P. GRADY, an individual,** | ) | |
| **TYLER MIDDLETON, an individual,** | ) | |
| **JASON ADAY, an individual, KELLY** | ) | |
| **WHITE, an individual, VICTORIA** | ) | |
| **ASHLOCK, an individual, JANE DOE,** | ) | |
| **an individual, and JOHN DOE, an** | ) | |
| **individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss (Doc. 16).

**I.     Factual Allegations**

Plaintiff Integrated Business Technologies, LLC ("IBT") is an Oklahoma limited liability

company with its principal place of business in Tulsa County. IBT provides managed information

technology ("IT") services and IT support, including data services, managed support, cloud

computing, network architecture, technical helpdesk support, computer support, and consulting.

IBT's clients are small and medium-sized businesses located throughout Oklahoma.  Eric Kehmeier

("Kehmeier") and Defendant Bret P. Grady ("Grady") formed IBT in February of 2007.  Each was

a 50% unit holder of IBT.  At formation, Kehmeier was appointed the managing member of IBT and

has continued to serve in that capacity as of the filing of the Complaint.  On or about June 1, 2013,

Kehmeier and Grady entered into an agreement ("Members' Agreement"), which was intended to restrict the disposition of the capital interests owned by Kehmeier and Grady.

On or about September 16, 2015, Grady invoked the provisions of the Members' Agreement and offered to withdraw his membership from IBT. This initiated a negotiation which led to Kehmeier agreeing to purchase Grady's membership interest in IBT for the sum of $750,000.00. On December 16, 2015, the transaction was memorialized and the rights and responsibilities of the parties commenced.  At the time of his departure, Grady was Vice President of Operations and was responsible for the day-to-day management and oversight of, among other things, the service desk and the network architecture and project design team.  The service desk was managed by Defendant Tyler Middleton ("Middleton") and the network architecture and project design team was managed by Defendant Jason Aday ("Aday").

On or about December 17, 2015, Grady formed Defendant NetLink Solutions, LLC. ("NetLink") is a single member Oklahoma limited liability company with its principal place of business in Tulsa County.  Middleton, Aday, Kelly White ("White"), and Victoria Ashlock ("Ashlock") ("Former Employees") are former employees of IBT and current employees of NetLink. By December 18, 2015, the Former Employees had tendered their resignation to IBT and became employed in the same or similar position at NetLink.  Prior to their resignation, the Former Employees all signed addendums to their employment agreements ("Addendums").   The Addendums defined and prevented dissemination of IBT's "confidential information" and contained non-compete and non-solicitation provisions.

After resigning from IBT and becoming employed by NetLink, the Former Employees engaged in systematic and repeated attempts to solicit and recruit current IBT employees away from IBT and into the employment of NetLink.  IBT alleges these acts were for the benefit of NetLink and in direct violation of their employment agreements, which prohibit the direct and indirect solicitation for employment of any employee of IBT for a period of twelve months following termination of employment with IBT.

## II.      Standard for Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted).  "The allegations must be enough that, if assumed to

3

be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

## III.   OUTSA - Misappropriation of Trade Secrets

### A.   Sufficiency of Allegations

This claim arises under the Oklahoma Uniform Trade Secrets Act ("OUTSA"). Okla. Stat. tit. 78, §§ 84-94. To prevail on a claim for misappropriation of trade secrets at the Rule 12(b)(6) stage, a plaintiff must sufficiently allege: (1) the existence of a trade secret; (2) misappropriation of this secret by the defendant; and (3) use of the secret by the defendants to the detriment of the plaintiff. *Micro Consulting, Inc. v. Zubeldia*, 813 F. Supp. 1514, 1534 (W.D. Okla. 1990); *MTG Guarnieri Mfg., Inc. v. Clouatre*, 239 P.3d 202, 209 (Okla. Civ. App. 2009). Defendants seek dismissal based on IBT's failure to adequately describe the "trade secrets" at issue. IBT argues that the "trade secrets" identified in paragraphs 34 and 38-41 of the Complaint include IBT's "architecture and design of systems, customer and vendor lists, contact details, and pricing schedules for goods and services." (Resp. to Mot. to Dismiss 7.)

Interpreting the OUTSA, the Tenth Circuit has explained that "[a]s a general matter, confidential data regarding operating and pricing policies can . . . qualify as trade secrets." *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1189 (10th Cir. 2009) (internal quotations omitted). Courts and juries apply a six-factor test adopted by the Oklahoma Supreme Court from the Restatement (Second) of Torts to determine if the information indeed qualifies as a trade secret. *Id.* At a minimum, IBT has alleged that Grady and Former Employees misappropriated pricing

4

schedules which could plausibly be deemed trade secrets depending upon the Court's application of the six-factor test at later stages of the proceedings.  Therefore, this claim is adequately pled.

**B.      Displacement of Other Claims**

Defendants argue that IBT's common law tort claims not arising under the OUTSA -- including unfair competition, tortious interference with business relations, tortious interference with prospective economic advantage, and conspiracy -- are displaced by the OUTSA and should be dismissed.  *See* Okla.  Stat.  tit.  78, § 92(A) (explaining that OUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret").  However, displacement only occurs if the tort claim relates specifically to "trade secrets" rather than other types of confidential information.  *See CTI Servs. LLC v. Haremza*, 797 F. Supp. 2d 1257, 1262 (N.D. Okla. 2011) (denying summary judgment "to the extent the [tort] claim is based upon breach of the alleged duties to keep other confidential business information secret").

Defendants' "displacement" argument fails at the Rule 12(b)(6) stage because: (1) IBT has adequately alleged that the stolen information may include other types of confidential information that do not qualify as trade secrets; and (2) IBT is entitled to plead other torts as alternative theories of relief in the event information is not deemed a trade secret entitled to protection under the OUTSA.  Therefore, the Court will not dismiss any tort claims based on their displacement by the OUTSA.

**IV.     Breach of Contract**

IBT alleges Former Employees entered into employment agreements, including the Addendums, and breached those employment agreements by: (1) disclosing and using trade secrets and confidential information of IBT; (2) soliciting employees of IBT for employment with NetLink;

and (3) competing with IBT.  This is sufficient to state claims for breach of contract against Former

Employees, and the Court finds no need for further discussion of Defendants' arguments.

**V.      Unfair Competition**

Under the heading of "unfair competition," IBT seeks to assert two distinct claims, one

arising under the Oklahoma Deceptive Trade Practices Act ("ODTPA"), Okla. Stat. tit.  78, § 51,

*et seq.*, and one arising under the Lanham Act ("Lanham Act"), 15 U.S.C. §§ 1116(a), 1125(a).[1]

**A.      ODTPA**

Under the ODTPA, a person engages in a deceptive trade practice if they engage in any one

of fourteen enumerated types of deception.  Okla. Stat. tit.  78, § 53A(1)-(14).  Relevant to this case,

this list includes "[d]isparag[ing] the goods, services, or business of another by false or misleading

representation of fact[.]"  *Id.* § 53A(8)  The Complaint alleges:

> Defendants have misrepresented IBT's capabilities and/or perceived limitations to
> current and prospective customers of IBT.  Defendants have made false statements
> about IBT to IBT's customers about the quality and scope of the services provided
> by IBT.  Defendants have made false and misleading statements to the public about
> the capabilities of IBT which reflect negatively on the capabilities of IBT.

(Compl. ¶¶ 59-61.)  The Complaint therefore alleges conduct that, if proven, could fall within one

of three categories above preventing misstatements about the services of another.  Defendants have

adequate notice of what specific category of deceptive practice and what type of wrongdoing is at

issue -- namely, making false representations of fact regarding IBT's offered services and

professional capabilities to IBT customers or potential customers in order to cast IBT in a negative

light.  Unlike the case cited by Defendants, in which the court determined that the defendants were

---

[1] If and to the extent IBT sought to assert a common law claim for "unfair competition," IBT
abandoned that claim in its response brief and failed to refute or respond to Defendants' arguments.

"left to guess and/or assume the basis for plaintiffs' ODTPA claim," IBT's claim is specific enough to survive a motion to dismiss. *Cf. N. Am. Ins. Agency, Inc. v. Bates*, No. CIV-12-544-M, 2013 WL 6150781, at *7 (W.D. Okla. Nov. 22, 2013).

### B.      Lanham Act

Generally, the Lanham Act "protects persons engaged in commerce against unfair competition." *Proctor & Gamble v. Haugen*, 222 F.3d 1262, 1270 (10th Cir. 2000) (internal alterations and quotations omitted). Specific to the allegations in this case, the Lanham Act creates civil liability where:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> *  *  *
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a).

### 1.      Pleading Standard

The Tenth Circuit has not decided whether the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to Lanham Act claims. A persuasive district court decision within the Tenth Circuit held that Rule 9(b) applies to Lanham Act claims "only insofar as the factual averments allege intentional or knowing misrepresentations." *See Cocona, Inc. v. Singtex Indus. Co.*, No. 14-CV-01593-MJW, 2014 WL 5072730, at *8 (D. Colo. Oct. 9, 2014). Under this approach, courts "focus on discrete factual averments, rather than the elements of the legal claim" and apply Rule 9(b) only when the factual allegations underlying a particular theory of recovery

"sound in fraud." *Id.*  The Court follows the approach outlined in *Cocona* in analyzing IBT's allegations.

### 2.    IBT's Allegations

IBT alleges:

> Defendants have misrepresented IBT's capabilities and/or perceived limitations to current and prospective customers of IBT.  Defendants have made false statements about IBT to IBT's customers about the quality and scope of the services provided by IBT.  Defendants have made false and misleading statements to the public about the capabilities of IBT which reflect negatively on the capabilities of IBT.  Defendants['] false statements and representations constitute commercial speech, advertising and/or promotion and were published with the intent of increasing NetLink's market share and/or decreasing IBT"s market share.

(Compl. ¶¶ 59-62.)  In other parts of the Complaint, IBT alleges that these same "false statements about the quality and scope of IBT's services and systems" were intentionally made.  Tracking the relevant statutory language, IBT is asserting a claim that Defendants "use[d] in commerce [a] . . . false or misleading description of fact, or false or misleading representation of fact, which - . . . in commercial advertising or promotion, misrepresent[ed] the nature, characteristics, [and] qualities . . . of [IBT's] goods, services, or commercial activities[.]"  15 U.S.C § 1125(a)(1)(B).

First, the Court concludes that IBT alleges intentional fraud in connection with the Lanham Act claim and that Rule 9(b)'s heightened standard applies.  The *Cocona* case is instructive.  In that case, the court held that Rule 9(b) applied to allegations that the defendant made statements to customers "knowing that they were false and/or misleading" because the defendant allegedly knowingly misrepresented that its product had the same "performance qualities" as the plaintiff's product. *See Cocona,* 2014 WL 5072730, at * 8.  In contrast, the court held that the normal pleading standard of Rule 8(b) applied to a claim that the defendant made false or misleading statements on its website about its own products' characteristics, such as odor absorption and ultraviolet

protection. *Id.* at * 9. The court reasoned that a defendant making representations about its own product that may be deemed misleading based on one specific measure did not "sound in fraud in any way." *Id.* at *8. Here, IBT's averments are not that Defendants made possibly misleading statements about IBT's services but are instead that Defendants intentionally lied or misled customers regarding the quality of IBT's services.

Second, the Court concludes that IBT's pleadings are insufficient under Rule 9(b) because it has not alleged who made the false statements, what the false statements were, when the false statements were made, or specifically why the statements were false. *See id.* at * 9 (dismissing Lanham Act claim for lack of particularity where plaintiff merely alleged that defendant made false statements to customers regarding the "performance qualities" of its products); *see also U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (explaining that Rule 9(b) requires a plaintiff to set forth, at a minimum, "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof"). The Lanham Act claim is therefore dismissed. In the interest of justice, IBT shall be permitted to file an Amended Complaint providing greater factual detail regarding the Lanham Act claim no later than seven days from the date of this Opinion and Order.

## VI.     Tortious Interference with Business Relations/Prospective Business Advantage

In order to recover for tortious interference with business relations, IBT must show: (1) it has a business or contractual right that was interfered with; (2) the interference was malicious and wrongful, and neither justified, privileged nor excusable; and (3) damage was proximately sustained as a result of the interference. *Mac Adjustment, Inc. v. Prop. Loss Research Bureau*, 595 P.2d 427, 428 (Okla. 1979). In order to recover for tortious interference with prospective business relations,

"a plaintiff must allege and prove the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted." *Batton v. Mashburn*, 107 F. Supp. 3d 1191, 1198 (W.D. Okla. 2015) (applying Oklahoma law) (internal quotation omitted).

IBT alleges that all Defendants made intentionally false statements about the quality and scope of IBT's services and systems to IBT's existing and potential customers. IBT alleges damage in the form of stolen existing and/or potential customers who entered into contracts with NetLink to provide the same or substantially the same services previously provided by IBT. With respect to both claims, Defendants argue that these allegations do not satisfy *Twombly* because they do not identify any specific existing or potential contracts that were interfered with or which Defendant did the interfering.

In its response brief, IBT claims to be withholding the identification of the specific customer contracts with which Defendants interfered until it receives a protective order. *See* Okla. Stat. tit. 78, § 90 (instructing courts to "preserve the secrecy of an alleged trade secret by reasonable means"). Upon joint request of the parties, the Court stayed discovery until a ruling on this motion. Therefore, discovery has not commenced, and no protective order has been issued. The Court finds IBT's desire to preserve confidentiality to be a sufficient justification for its failure to disclose the customer contracts or potential contracts allegedly interfered with at this juncture, particularly in light of the instruction to courts in § 90 of the OUTSA. Further, IBT has alleged the interference occurred within a discrete five -week period from December 17, 2015 to January 28, 2016. Although there are five individual Defendants, this is a case where IBT likely will not know which

specific Defendant did the interfering without some discovery.  It is also likely, given the conspiracy charge, that the allegations will be that the individual Defendants worked in concert under Grady's direction to steal the customers.  The Court further finds that, given the discrete time frame and limited number of potential wrongdoers, Defendants have sufficient notice of the accusations against them and can adequately defend themselves.

**VII.     Conspiracy**

IBT alleges that all Defendants "combined and had a meeting of the minds to commit unlawful acts against IBT including but not limited to the misappropriation of trade secrets and Confidential Information." (Compl. ¶ 91.)  Defendants' only argument in favor of dismissal is that this claim is "displaced" by the OUTSA, which the Court has rejected.  *See supra* Part III.B.

**VIII.    Computer Fraud and Abuse Act**

The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, is primarily a criminal statute but also provides a civil cause of action if jurisdictional requirements are satisfied. Defendants challenge IBT's Complaint both as to the jurisdictional provisions and the sufficiency of the factual allegations.

**A.     Jurisdictional**

A civil action may be brought under the CFAA only if the offense resulted in one of the following:

> (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (III) physical injury to any person;
> (IV) a threat to public health or safety;

11

(V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security[.]

*See* 18 U.S.C. §§ 1030(g); 1030(c)(4)(A)(i)(I)-(V).  IBT concedes that subsection (I) provides the only possible basis for its civil action.

Defendants contend that IBT's failure to specifically allege "$5,000 or more" as an amount of loss is fatal to the claim.  IBT argues that its substantive allegations, which allege Defendants illegally obtained information from protected computers "to usurp client accounts of existing and potential customers of IBT," (Compl. ¶ 98), are more than sufficient to demonstrate that $5,000 or more is in controversy as to this claim.

The factual allegations support a plausible claim that $5,000 or more is at issue, and the pleadings are therefore adequate.  However, because the Court is allowing amendment for purposes of the Lanham Act claim, IBT may also amend this claim to expressly allege that $5,000 or more is in controversy to avoid any further arguments on this issue.

### B.        Sufficiency of Pleadings

Defendants also argue that IBT's allegations fail to state a claim for any type of CFAA violation whether the Court applies Rule 8(a) or Rule 9(b) pleading standards.  The Court has found no Tenth Circuit case applying a heightened pleading standard to the CFAA, and a district court within this circuit has declined to do so.  *See Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*, No. 2:07-CV-400 TC, 2008 WL 4642975, at *8 (D. Utah Oct. 17, 2008).  Accordingly, the Court applies the notice pleading standard of Rule 8(a).

IBT has adequately pled violations of 18 U.S.C. § 1030(a)(2), (4), and (5).  IBT alleges that Defendants, in concert with one another and as part of their overall conspiracy, intentionally

accessed, or attempted to access, IBT's computers.  IBT alleges that they did so without authorization and in excess of authorized access for the purposes of obtaining information from protected computers of IBT, including information necessary to usurp client accounts of existing and potential customers of IBT.  Although Defendants contend this is merely a formulaic recitation of the elements, in this specific context, little else is required to state a plausible claim for relief.  It is plausible that a former or current employee could obtain unauthorized access to a business's computer obtain unauthorized information, and/or cause damage.  IBT likely lacks knowledge as to how its computers were hacked, when they were hacked, and other details surrounding their allegations but, upon information and belief, they have sufficiently alleged that Defendants did so. Defendants are on notice of the alleged conduct that violated the statute and the type of damage it caused -- namely, obtaining information that caused IBT to lose customers.

Defendants also argue that mere recitation of the computer as "protected" is inadequate because IBT has not alleged how or why its computers had "protected" status under the statute. This argument is misplaced.  The statute defines two types of "protected" computers -- computers used by a financial institution of the U.S. Government and computers used in or affecting interstate or foreign commerce.  *See* 18 U.S.C. § 1030(e)(2)(A) & (B).  The Complaint makes clear that IBT is not a financial institution.  Defendants are on adequate notice that IBT will seek to prove this element by showing that its allegedly hacked computers were used in or affected interstate commerce.

## IX.   Wiretap Act

The Wiretap Act is a criminal statute that provides a private right of action to any "aggrieved person," which is defined in relevant part as "a person who was a party to any intercepted wire, oral, or electronic communication . . . ."  18 U.S.C. § 2010.  The Wiretap Act criminally punishes any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a).

Defendants argue that this claim is inadequately pled and lacking in factual specificity. However, IBT has alleged that Defendants engaged in an unauthorized "monitoring scheme" and "intentionally intercepted, endeavored to intercept and/or procured individuals to intercept electronic communications of IBT and/or IBT's customers or potential customers."  (Compl. ¶¶ 106-107.) IBT's response brief clarifies that the electronic communications were emails.  This states a plausible claim that Defendants, acting in concert, somehow monitored and intercepted emails between IBT and its customers, and Defendants are on sufficient notice of what conduct allegedly violated the Wiretap Act.  Again, IBT likely lacks details as to how and when this was accomplished but has stated a plausible claim for relief assuming it can gather the necessary evidence.

## X.   Alter Ego

IBT alleges that "the protections of the limited liability [company] should be set aside and the corporate veil should be pierced such that Grady should be answerable for the claims of IBT against NetLink inasmuch as NetLink is the alter ego of Grady." (Compl. ¶ 115), and Defendants seek "dismissal" of this theory.  Although styled as such, this is not a separate claim for relief but is instead a theory of imposing individual liability on Grady.  The "alter ego" question issue will be

analyzed, if and when necessary, in conjunction with a particular claim upon which liability is sought at later stages of the proceedings.

**XI.     Conclusion**

Defendants' Motion to Dismiss (Doc. 16) is GRANTED IN PART and DENIED IN PART. The motion is granted as to IBT's Lanham Act claim and denied as to all other claims.

IBT may file an amended complaint containing greater specificity as to the Lanham Act claim and a jurisdictional amount as to the CFAA claim, if desired, no later than seven days from the date of this Order.  The parties are ordered to file a new Joint Status Report no later than fourteen days from the date of this Order.

**SO ORDERED this 12th day of September, 2016.**

**TERENCE KERN**
**United States District Judge**

15